1  Sonja S. Weissman (SBN 154320)
   Dana A. Blanton (SBN 232373)
2  REED SMITH LLP
   1999 Harrison St., Suite 2400
3  Oakland, CA  94612
   Telephone:    510.763.2000
4  Facsimile:    510.273.8832
   Email:  sweissman@reedsmith.com;
5  dblanton@reedsmith.com

6  Michael K. Brown (SBN 104252)
   Ginger Heyman Pigott (SBN 162908)
7  REED SMITH LLP
   355 South Grand Avenue, Suite 2900
8  Los Angeles, CA  90071
   Telephone:    213.457.8000
9  Facsimile:    213.457.8080
   Email:  mkbrown@reedsmith.com;
10 gheyman@reedsmith.com

11 Attorneys for Defendant
   Medtronic, Inc.
12

E-filing

ORIGINAL
FILED
DEC 14 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

JCS

13        UNITED STATES DISTRICT COURT

14        NORTHERN DISTRICT OF CALIFORNIA

15 ROSEANN MITCHELL, URIELA MITCHELL,     No.: C07-06352
   THOMAS MITCHELL and PATRICIA HINES,
16                                         NOTICE OF REMOVAL OF
                 Plaintiffs,               MEDTRONIC, INC. UNDER 28 U.S.C. 1441
17
           vs.
18
   MEDTRONIC, INC., McKESSON
19 CORPORATION and Does 1 to 50, Inclusive,
20               Defendants.
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1       PLEASE TAKE NOTICE that defendant Medtronic, Inc. ("Medtronic") hereby removes the

2 above-captioned action from the Superior Court of the State of California in and for the County of

3 San Francisco to the United States District Court for the Northern District of California pursuant to

4 28 U.S.C. §§ 1332 and 1441. As set forth more fully below, this case is properly removed to this

5 Court pursuant to 28 U.S.C. § 1441 because Medtronic has satisfied the procedural requirements for

6 removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

7 In support of this Notice of Removal, Medtronic states the following:

8

9 **I.     THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED**

10

11      1.     On November 5, 2007, Plaintiffs Roseann Mitchell, Uriela Mitchell, Thomas Mitchell

12 and Patricia Hines ("Plaintiffs") commenced this action entitled *Mitchell, et al. v. Medtronic, Inc., et*

13 *al.*, Case No. CGC-07-468894 (the/this "Action") against Medtronic and McKesson Corporation

14 ("McKesson") by filing a Complaint (the "Complaint") with the Superior Court of the State of

15 California in and for the County of San Francisco. Plaintiffs' Complaint purports to plead a number

16 of causes of action, but all of Plaintiffs' putative claims are premised on the basic allegation that

17 Roseann Mitchell was injured by allegedly defective Medtronic Sprint Fidelis cardiac-defibrillator

18 leads ("Fidelis Leads"). A true and correct copy of the Complaint and Summons are attached hereto

19 as Exhibit "A".

20

21      2.     The Complaint was served on Medtronic on November 15, 2007. Medtronic is

22 informed and believes that defendant McKesson was served on November 15, 2007. Accordingly,

23 this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1441.

24

25      3.     All properly joined and served defendants consent to this removal.[1]

26

27

28   [1] The Complaint purports to name McKesson as codefendant. As discussed below, however, McKesson has been fraudulently joined as a defendant herein. Accordingly, McKesson's consent to this removal is not required. *See* 28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

4.    The Superior Court of the State of California in and for the County of San Francisco is located within the Northern District of California. *See* 28 U.S.C. § 83. Thus, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

5.    On December 13, 2007 Medtronic filed an Answer to the Complaint. A true and correct copy of Medtronic's Answer filed in this action is attached hereto as Exhibit "B."

6.    No previous application has been made for the relief requested herein.

7.    Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Medtronic, including the Complaint and Summons, are attached hereto.

8.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Court for the Superior Court of the State of California in and for the County of San Francisco.[2]

II.    **REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1332**

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and it is apparent that Plaintiffs seek recovery of an amount in excess of $75,000, exclusive of costs and interest.

---

U.S.C. § 1441(b); *Hewitt v. City of Stanton*, 798 F.2d 1230, 1233 (9th Cir. 1986) (co-defendants who are fraudulently joined need not join in removal).

[2] By filing a Notice of Removal in this matter, Medtronic does not waive its right to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Medtronic specifically reserves the right to assert any defenses and/or objections to which it may be entitled.

NOTICE OF REMOVAL OF DEFENDANT MEDTRONIC, INC. UNDER 28 U.S.C.§ 1441(a)

A limited liability partnership formed in the State of Delaware
REED SMITH LLP

**A.**    **Diversity of Citizenship**

10.    There is complete diversity between Plaintiffs and the sole properly joined defendant, Medtronic.

11.    Medtronic is now, and at the time of the filing of this action was, a corporation existing under the laws of the State of Minnesota, having its principal place of business in the State of Minnesota. *See* Complaint at ¶ 6 (alleging that Medtronic "is a Minnesota corporation" with its principal place of business in Minneapolis, Minnesota). Medtronic thus is a citizen of Minnesota for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

12.    Plaintiffs' Complaint alleges that Plaintiffs are citizens of the State of California. (Complaint at ¶¶2-5). Based on this allegation, Medtronic is informed and believes that Plaintiffs are, and at the time of the filing of this action were, citizens of the State of California.

13.    Upon information and belief, none of the Doe defendants have been substituted with any named defendants or been served with process in the state court action. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. §1441(a); *accord Soliman v. Phillip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Therefore, the citizenship of Does 1 to 50 should be disregarded for purposes of diversity.

14.    Because the remaining named defendant – McKesson – is fraudulently joined, its citizenship must likewise be ignored for the purpose of determining the propriety of removal. *See McCabe*, 811 F.2d at 1339. *Accord Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds.") (citations omitted).

- 3 -

15. As the Ninth Circuit has explained, "[f]raudulent joinder is a term of art." *McCabe*, 811 F.2d at 1339.[3] A defendant is fraudulently joined and its presence in the lawsuit is ignored for purposes of determining diversity where no viable cause of action has been stated against the resident defendant. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey*, 139 F.3d at 1318-19; *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002).

16. A defendant is fraudulently joined and its presence in the lawsuit is ignored for purposes of determining diversity "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state." *Morris*, 236 F.3d at 1067; *Ritchey*, 139 F.3d at 1318-19; *TPS Utilicom Services Inc.*, 223 F. Supp. 2d 1089, 1100 (C.D. Cal. 2002) (citations omitted).

17. Here, it is obvious on the face of the Complaint that defendant McKesson has been fraudulently joined because Plaintiffs do not make any material factual allegations against McKesson at all. The Supreme Court has made clear that when filing a complaint, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). The plaintiff must provide some factual allegations of the grounds upon which the claim rests (*id.* at 1965 n. 3) and the failure to assert material factual allegations against a defendant is a hallmark of fraudulent joinder. *See, e.g., Taylor v. Shetler Lincoln Mercury Ltd.*, 2007 WL 3244701, No. 2:07-CV-0097, * 1-2 (W.D. La. Nov. 2, 2007) (citing *Twombly* and finding fraudulent joinder); *Pascale Service Corp. v. International Truck And Engine Corporation*, 2007 WL 2905622, No. 07-0247-S, *2-4 (D.R.I. Oct. 1, 2007) (citing *Twombly* and finding fraudulent joinder); *Lyons v. American Tobacco Co.*, No. Civ. A. 96-0881-BH-

---

[3] It "is not intended to impugn the integrity of Plaintiff[s] or [their] counsel." *Brown v. Allstate Ins. Co.*, 17 F. Supp.2d 1134, 1137 (S.D. Cal. 1998).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF REMOVAL OF DEFENDANT MEDTRONIC, INC. UNDER 28 U.S.C.§ 1441(a)

1    S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of

2    fraudulent joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any

3    specific factual allegations" against them).

4

5        18.    All that Plaintiffs offer here as to McKesson is a single boilerplate allegation that, as a

6    general matter, McKesson markets, distributes, promotes, advertises, and sells Fidelis Leads.

7    (Complaint at ¶7). But just as in *Lyons*, there are "no specific factual allegations in the Complaint to

8    support such claims against the distributor[] [defendant]." 1997 WL 809677, at *5. Nor do

9    Plaintiffs allege any facts that would indicate that McKesson sold or distributed the Fidelis Leads

10   that were allegedly implanted in the Plaintiff.[4]  Plaintiffs cannot cure these deficiencies by simply

11   relying on allegations directed toward "defendants." *See Lyons*, 1997 WL 809677, at *5 ("Although

12   plaintiffs in their complaint as in their respective briefs filed in support of their motion to remand

13   generally refer to all defendants collectively with respect to at least three of their causes of action . . .

14   there exists no specific factual allegations in the Complaint to support such claims against the

15   distributors."); *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, ("In re PPA"), MDL No. 1407,

16   Docket No. C02-423R, Slip. Op. at 5 (W.D. Wash. Nov. 27, 2002) (a true and correct copy is

17   attached hereto as Exhibit "C") (allegations directed toward "defendants" or "all defendants"

18   insufficient).    Accordingly, on its face, the Complaint fails to state a viable cause of action against

19   McKesson.

20

21       19.    Moreover, Plaintiffs' failure to allege any facts to support a claim against McKesson

22   is not a mere pleading deficiency – Plaintiffs *cannot* allege that McKesson sold or distributed the

23   Sprint Fidelis leads allegedly at issue in this case.

24

25

26   4 Indeed, although the crux of Plaintiffs' Complaint is an alleged failure to adequately warn of alleged risks associated
     with the Fidelis leads, the Complaint does not include any allegations that McKesson made any specific representations

27   or warranties to plaintiff or plaintiff's implanting physician, or that plaintiff or plaintiff's physicians relied on any such
     specific representations or warranties by McKesson.

28

NOTICE OF REMOVAL OF DEFENDANT MEDTRONIC, INC. UNDER 28 U.S.C.§ 1441(a)

20.    The Ninth Circuit has made clear that "[w]here fraudulent joinder is an issue, . . . '[t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent.'" *Ritchey*, 139 F.3d at 1318 (*quoting McCabe*, 811 F.2d at 1339).  Thus, "[f]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris*, 236 F.3d at 1068 (citation omitted). *Accord Ritchey*, 139 F.3d at 1318 ("If we had been required [in *McCabe*] to look at facts outside of the complaint to decide that issue, we would have done so."); *McCabe*, 811 F.2d at 1339 (considering sworn Declarations in determining fraudulent joinder issue).

21.    Thus, "a removing defendant" may "submit facts showing that a resident defendant had 'no real connection with the controversy.'" *Ritchey*, 139 F.3d at 1318 (*quoting Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).  That is precisely the situation here.  McKesson is not properly joined as a defendant herein because as the Declaration submitted by Medtronic establishes, McKesson is not now, and has never been, an authorized seller or distributor of Sprint Fidelis Leads in the State of California or anywhere else in the United States and, as such, McKesson did not distribute or sell any Sprint Fidelis lead at issue in this action.  (See Affidavit of Henry David Roberts ("Roberts Aff.), attached hereto as Exhibit "D").  Indeed, McKesson has never been authorized to market, distribute, promote, advertise, or sell Medtronic Sprint Fidelis Leads in the State of California or anywhere else in the United States. *Id.*

22.    Accordingly, McKesson was improperly joined as a defendant and its citizenship may not be considered in assessing whether there is diversity of citizenship under 28 U.S.C. § 1332.

23.    Because Plaintiffs allegedly are citizens of California and the sole properly named Defendant, Medtronic, is not a citizen of California, complete diversity exists in this action.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF REMOVAL OF DEFENDANT MEDTRONIC, INC. UNDER 28 U.S.C.§ 1441(a)

B.    **Amount in Controversy**

24.    The amount in controversy requirement of 28 U.S.C. § 1332 is also satisfied.  Under 28 U.S.C. § 1332(a), the amount in controversy in a case where federal jurisdiction is based on diversity of citizenship must exceed $75,000.  Where, as here, the plaintiff fails to allege a specific amount of damages in the complaint, the District Court must "examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount."  *White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003).

25.    Plaintiffs here allege injuries as a result of Roseann Mitchell's implantation with Fidelis leads (Complaint at ¶¶ 14, 18, 21, 27, 83).  Plaintiffs do not seek to limit the amount of compensatory damages that they allege they are entitled to receive.

26.    Plaintiffs allege that the Sprint Fidelis leads were defective, that as a result "she experienced multiple episodes of severe and obvious shock to her heart and person," and that "[a]s a consequence therein, she underwent explant surgery at which the physicians discovered that the Sprint Fidelis Lead, model 6949, had fractured and the shocks were a result of said fracture." (Complaint, ¶ 14.)  *See also id.*, ¶ 21 (alleging that Plaintiff Roseann Mitchell was "forced to have an early explant and implant of a new lead system, scarring her already fragile heart, and forcing her to undergo additional and unnecessary complicated surgery" and that "[a]s a result," she "has suffered severe physical and emotional injuries . . . in addition to the injuries and damages sustained as a result of the shocks that preceded the explantation"); *id.*, ¶ 27 (alleging that "[a]s a result of the fracture" of the Sprint Fidelis leads, Plaintiff Roseann Mitchell "suffered inappropriate shocking leading to the need for dangerous and serious cardiac surgery, required and will continue to require healthcare and services; has incurred and will continue to incur medical and related expenses; has suffered and will continue to suffer mental anguish, diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, and other such damages").  And, finally, Plaintiffs allege that their damages include, *inter alia,* general damages, damages for

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   medical, hospital, and incidental expenses, loss of earnings and loss of earning capacity, and punitive

2   and exemplary damages.  (Complaint at ¶ 85).

3

4        27.    Based on these allegations, it is "facially apparent" from their Complaint that

5   Plaintiffs seek an amount in excess of $75,000.

6

7        28.    Other federal courts have found that the amount in controversy likely exceeds

8   $75,000 in cases alleging similar types of damages.  *See, e.g.*, *Luckett v. Delta Airlines, Inc.*, 171

9   F.3d 295, 298 (5th Cir. 1999) (finding it "facially apparent" that plaintiff's claim exceeded $75,000

10  where plaintiff alleged property damage, travel expenses, an emergency ambulance trip, a six-day

11  stay in the hospital, pain and suffering, humiliation, and temporary inability to do housework after

12  her hospitalization); *White*, 319 F.3d at 674 (finding it "facially apparent" that plaintiff's wrongful

13  termination claim exceeded $75,000 based on claims for loss of pay, fringe benefits, impaired

14  earning capacity, harm to credit, emotional distress, attorney fees, punitive damages, etc.).  The

15  District Court in *White* concluded that the compensatory damages alone "in all likelihood" exceeded

16  $75,000.  *White*, 319 F.3d at 675.

17

18       WHEREFORE, Medtronic respectfully removes the above-described action from the

19  Superior Court of the State of California in and for the County of San Francisco to this Court.

20

21  DATED: December 14, 2007.                REED SMITH LLP

22

23                                   By _____
                                          Sonja S. Weissman
24                                        Dana A. Blanton
                                          Attorneys for Defendant
25                                        Medtronic Inc.

26  DOCSOAK-9894954.1

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 8 -

**EXHIBIT A**

**F I L E D**

San Francisco County Superior Court

NOV 0 5 2007

GORDON PARK-LI, Clerk

BY: _____

DEBORAH STEPPE, Deputy Clerk

NANCY HERSH, ESQ., State Bar No. 49091
MARK E. BURTON, JR., ESQ., State Bar No. 178400
RACHEL ABRAMS, ESQ., State Bar No. 209316
CYNTHIA BROWN, ESQ., State Bar No. 248846
HERSH & HERSH
A Professional Corporation
2080 Opera Plaza
601 Van Ness Avenue
San Francisco, CA 94102-6388
Telephone: (415) 441-5544
Facsimile:   (415) 441-7586

Attorneys for Plaintiffs

**SUMMONS ISSUED**

**CASE MANAGEMENT CONFERENCE SET**

APR 0 4 2008 -9ᵒᵒ AM

**DEPARTMENT 212**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

ROSEANN MITCHELL, URIELA
MITCHELL, THOMAS MITCHELL
and PATRICIA HINES,

                    Plaintiffs,

vs.

MEDTRONIC, INC., McKESSON
CORPORATION and DOES ONE
through FIFTY, inclusive,

                    Defendants.

CASE NUMBER **CGC-07-468894**

**COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL**

**[PRODUCTS LIABILITY]**

1. Strict Liability-Failure to Warn
2. Strict Product Liability
3. Negligence
4. Breach of Implied Warranty
5. Breach of Express Warranty
6. Fraud
7. Fraud by Concealment
8. Deceptive Trade Practice
9. Negligent Misrepresentation
10. Intentional Infliction of Emotional
    Distress
11. Negligent Infliction of Emotional
    Distress

HERSH AND HERSH
A Professional Corporation

- 1 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**DEMAND FOR JURY TRIAL**

1.

Plaintiffs herewith request a trial by jury as to all issues of material fact.

**PARTIES**

2.

Plaintiff ROSEANN MITCHELL is, and was, at all relevant times, a resident of the State of California.

3.

Plaintiff URIELA MITCHELL is, and was, at all relevant times, a resident of the State of California and is the daughter of Plaintiff ROSEANN MITCHELL.

4.

Plaintiff PATRICIA HINES is, and was, at all relevant times, a resident of the State of California and is the daughter of Plaintiff ROSEANN MITCHELL.

5.

Plaintiff THOMAS MITCHELL is, and was, at all relevant times, a resident of the State of California and is the son of Plaintiff ROSEANN MITCHELL.

6.

Defendant MEDTRONIC, INC. is a Minnesota corporation, with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432. Medtronic develops technology to treat conditions such as heart disease and other illnesses. Medtronic manufactures, markets, advertises, promotes and sells Medtronic implantable defibrillators ("ICDs"), and "SPRINT FIDELIS Leads," worldwide.

7.

Defendant McKESSON CORPORATION, ("McKESSON") is a corporation existing under the laws of incorporation of the State of New Jersey, with its principal

- 2 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

place of business in San Francisco, California. At all times herein mentioned, Defendant McKESSON was, and is, been engaged in the business of marketing, distributing, promoting, advertising and selling MEDTRONIC SPRINT FIDELIS Leads nationwide and in the State of California.

8.

In engaging in the conduct alleged herein, each Defendant acted as the agent for each of the other Defendants.

9.

Defendants MEDTRONIC, INC., McKESSON and Does One through Fifty will hereafter be referred to as "Defendants".

10.

At all times relevant to this action, Defendants intentionally, recklessly and/or negligently concealed, suppressed, omitted, and misrepresented the risks, dangers, defects, and disadvantages of Medtronic SPRINT FIDELIS Leads, and advertised, promoted, marketed, sold and distributed Medtronic SPRINT FIDELIS Leads as a safe medical device when, in fact, Defendants knew that Medtronic SPRINT FIDELIS Leads were not safe for their intended purposes and that Medtronic SPRINT FIDELIS Leads would cause, and did cause, serious medical problems, and in some patients, catastrophic injuries and deaths.

11.

At all relevant times herein, Defendants, at all times relevant herein, designed, developed, manufactured, promoted, marketed, distributed, tested, warranted and sold in interstate commerce (including California) SPRINT FIDELIS Leads. Defendant McKesson has its principal place of business in San Francisco, California, and all said defendants do substantial business in the State of California, advertise in California, and receive substantial compensation and profits from sales of Medtronic SPRINT FIDELIS Leads in

- 3 -

HERSHANDHERSH
A Professional Corporation

California.

## **FACTUAL ALLEGATIONS**

12.

Defendants design, research, develop, manufacture, test, market, advertise, promote, distribute, and sell products that are sold to and marketed to treat cardiac arrhythmias, heart failure, and coronary and peripheral vascular disease including implantable cardiac defibrillators ("ICDs") and the SPRINT FIDELIS Leads which are the subject of this lawsuit. ICD detects and corrects both fast and slow heart rates. The defibrillator portion regulates the heart through electrical signals and allows an appropriate rhythm to take over. The SPRINT FIDELIS Leads connect the ICD to the heart through a blood vessel and are intended to transmit electrical impulses that are necessary to maintain normal rate and rhythm.

13.

Plaintiff ROSEANN MITCHELL has a cardiovascular condition that necessitates the use of an ICD and was implanted with such device on December 31, 2005. The ICD was attached to her heart with the lead wire system called SPRINT FIDELIS Lead, model number 6949, designed, developed, manufactured, marketed, promoted, advertised, tested, warranted and distributed by defendants herein.

14.

Between early 2006 through September 2007, Plaintiff ROSEANN MITCHELL experienced episodes of shock and in September 2007, while in the car with the other plaintiffs herein, she experienced multiple episodes of severe and obvious shock to her heart and person. As a consequence therein, she underwent explant surgery at which the physicians discovered that the SPRINT FIDELIS Lead, model 6949, had fractured and the shocks were a result of said fracture.

- 4 -

15.

Between September 2004 and July 2007, Defendants received more than 650 reports of adverse events pertaining to SPRINT FIDELIS Leads filed by physicians and patients. The most frequent complaints were fractured leads caused by the small diameter of the coil and conductor. Fractured leads can deliver unneeded, frightening shocks and potentially life threatening shocks. After analyzing all the leads, defendants concluded that 77 of 125 SPRINT FIDELIS Leads tested (62%) were defective and dangerous due to fracture but defendants continued to market and sell the SPRINT FIDELIS Leads without publishing their findings on testing and analysis.

16.

In a separate study in early 2005, Defendants began a coordinated analysis of more that 25000 patient files who had received SPRINT FIDELIS Leads. Defendants found that their own analysis showed the failure rate of SPRINT FIDELIS Leads was three times higher than the previous ICD lead model but did not publish these findings and continued to manufacturer, market, promote and sell the SPRINT FIDELIS Leads as before.

17.

At all times relevant herein, Defendants knew there was a defect and knew the defect in the SPRINT FIDELIS Lead was attributable to the small diameter of the coil and conductor. Defendants knew that the SPRINT FIDELIS Lead was subject to fracture damage both during and after implant. This information was known to the Defendants prior to implantation in Plaintiff ROSEANN MITCHELL in 2005.

18.

At all times relevant to this action, Defendants knew, that the SPRINT FIDELIS Leads were not safe for the patients for whom they were prescribed and implanted, because the leads fractured and otherwise malfunctioned, and therefore failed to operate in a safe

- 5 -

HERSHANDHERSH
A Professional Corporation

and continuous manner, causing injuries from fracture which include, but are not limited to, damages to the blood vessel following insertion, formation of blood clots around the lead itself, additional surgery to explant the fractured leads followed by a second immediate implant surgery, and scarring on fragile compromised heart muscles.

19.

Defendants' representations regarding the performance of the SPRINT FIDELIS Leads, including but not limited to, of the consistency of the performance of the SPRINT FIDELIS Leads, their safety and reliability, were untrue as set forth in their own testing and analysis. The Defendants failed to disclose to physicians, patients or Plaintiff ROSEANN MITCHELL that its leads were subject to fracture causing the injuries herein described.

20.

At all relevant times herein, Defendants continued to promote the SPRINT FIDELIS Lead as safe and effective even when its own internal patient study were reporting high failure rates from fracture while reaping annual sales of well over $12 billion.

21.

Plaintiff ROSEANN MITCHELL's SPRINT FIDELIS Lead was explanted on September 11, 2007. The lead system itself had fractured. Plaintiff ROSEANN MITCHELL was, therefore, forced to have an early explant and implant of a new lead system, scarring her already fragile heart, and forcing her to undergo additional and unnecessary complicated surgery. As a result, Plaintiff ROSEANN MITCHELL has suffered severe physical and emotional injuries as a result of the defective SPRINT FIDELIS Lead system in addition to the injuries and damages sustained as a result of the shocks that preceded the explantation.

22.

It was not until October 15, 2007, that the SPRINT FIDELIS Leads model number

- 6 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

HERSH AND HERSH
A Professional Corporation

6949, Plaintiff's model, were recalled due to fracture defects leading to severe injury and/or death in patients implanted with this model number.

23.

At all times herein mentioned, the officers and/or directors of the Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew of the hazards and dangerous propensities of said products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by Plaintiffs.

## FIRST CAUSE OF ACTION
### [Strict Product Liability; Failure to Warn]

24.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-23, inclusive, of this Complaint.

25.

Defendants manufactured, sold and/or distributed SPRINT FIDELIS Leads to Plaintiff ROSEANN MITCHELL to be used in implantation of her ICD.

26.

At all times mentioned herein, SPRINT FIDELIS Leads were and are dangerous and presented a substantial danger to cardiac patients who were implanted with the SPRINT FIDELIS Leads, and these risks and dangers were known or knowable at the time of distribution and implantation in Plaintiff ROSEANN MITCHELL in 2005. Ordinary consumers would not have recognized the potential risks and dangers the SPRINT FIDELIS Leads posed to cardiac patients because its uses was specifically promoted to improve the health of cardiac patients. The SPRINT FIDELIS Leads were used in a way reasonably foreseeable to all Defendants by Plaintiff ROSEANN MITCHELL. Defendants failed to

- 7 -

HERSHANDHERSH
A Professional Corporation

provide warnings of such risks and dangers to Plaintiff ROSEANN MITCHELL as described herein.

27.

As a result of the fracture of the SPRINT FIDELIS Leads Plaintiff ROSEANN MITCHELL Plaintiff ROSEANN MITCHELL suffered inappropriate shocking leading to the need for dangerous and serious cardiac surgery, required and will continue to require healthcare and services; has incurred and will continue to incur medical and related expenses; has suffered and will continue to suffer mental anguish, diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, and other such damages.

28.

In doing the acts herein described, the Defendants acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of the Defendants.

29.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### SECOND CAUSE OF ACTION
### [Strict Liability]

30.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-29, inclusive, of this Complaint.

HERSHANDHERSH
A Professional Corporation

- 8 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

31.

The SPRINT FIDELIS Leads were manufactured and/or supplied by the Defendants, and were placed into the stream of commerce by these Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with its design of formulation.

32.

Alternatively, the SPRINT FIDELIS Leads manufactured and/or supplied by the Defendants, and each of them, were defective in design or formulation, inadequate warning or instruction and/or inadequate post-marketing warnings or instructions in that when it was placed in the stream of commerce, it was unreasonably dangerous, it was more dangerous than and ordinary consumer would expect and more dangerous than other forms of lead used with ICD's.

33.

As a result of the defective unreasonably dangerous condition of these products manufactured and/or supplied by the Defendants, and each of them, Plaintiff ROSEANN MITCHELL was caused to suffer the herein described injuries and damages.

34.

Defendants acted with conscious and deliberate disregard of the foreseeable harm caused by SPRINT FIDELIS Leads.

35.

Defendants thereby acted with fraud, malice, oppression and a conscious disregard for the Plaintiff and general public's safety, who accordingly requests that the trier of fact, in the exercise of sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for their conduct, in an amount sufficiently large to be an example to others and deter the Defendants and others from engaging in

- 9 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   similar conduct in the future. The aforesaid wrongful conduct was done with the advance

2   knowledge, authorization, and/or ratification of an officer, director, and/or managing agent

3   of Defendants.

4

5                                          36.

6       WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set

7   forth.

8                          **THIRD CAUSE OF ACTION**
                                 **[Negligence]**
9

10                                         37.

11      Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every

12   allegation contained in Paragraphs 1-36, inclusive, of this Complaint.

13                                         38.

14      Defendants, and each of them, and their representatives were manufacturers and/or

15   distributors of SPRINT FIDELIS Leads model 6949.  At all times herein, Defendants had a

16   duty to properly manufacture, compound, test, inspect, package, label, distribute, market,

17   examine, maintain supply, provide proper warnings and prepare for use and sell the

18   aforesaid product.

19

20                                         39.

21      Defendants, and each of them, so negligently and carelessly manufactured,

22   compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled,

23   distributed, recommended, displayed, sold, examined, failed to examine and supplied

24   aforesaid product, that it was dangerous and unsafe for the use and purpose for which it was

25   intended, that is, regulating incorrect heart rates in Plaintiffs and others similarly situated.

26   As a result of the carelessness and negligence of Defendants, Plaintiff ROSEANN

27   MITCHELL had the SPRINT FIDELIS Leads implanted in the manner intended by the

28
                                         - 10 -

HERSHANDHERSH
A Professional Corporation

manufacturer, and, as a result, Plaintiff suffered the injuries and damages described herein.

40.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION
### [Breach of Implied Warranty]

41.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-40, inclusive, of this Complaint.

42.

Defendants impliedly warranted that its SPRINT FIDELIS Leads, which Defendants designed, manufactured, assembled, promoted and sold to Plaintiffs were merchantable and fit and safe for ordinary use. Defendants further impliedly warranted that its SPRINT FIDELIS Leads were fit for the particular purpose of regulating heart rate and rhythm.

43.

Defendants' SPRINT FIDELIS Leads were defective, unmerchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which they were sold, and subjected Plaintiffs to severe and permanent injuries. Therefore, Defendants breached the implied warranties of merchantability and fitness for a particular purpose when its leads were sold to Plaintiffs, in that the leads are defective and have fractured and otherwise failed to function as represented and intended.

44.

As a result of Defendants breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiff ROSEANN MITCHELL has sustained and will continue to sustain the injuries and damages described herein and is therefore entitled to

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  compensatory damages.

2                                              45.

3      After Plaintiffs were made aware their injuries were a result of the aforesaid

4  product, SPRINT FIDELIS Leads, Defendants had ample and sufficient notice of the

5  breach of said warranty.

6                                              46.

7      WHEREFORE, Plaintiffs prays for judgment as hereinafter set forth.

8                          **FIFTH CAUSE OF ACTION**
9                          **[Breach of Express Warranty]**

10                                             47.

11     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every

12 allegation contained in Paragraphs 1-46, inclusive, of this Complaint.

13                                             48.

14     Defendants expressly warranted to Plaintiffs and/or their authorized agents or sales

15 representatives, in publications, and other communications intended for medical patients,

16 and the general public, that the defective leads were safe, effective, fit and proper for their

17 intended use.

18                                             49.

19     Plaintiff ROSEANN MITCHELL, and Plaintiff's physicians reasonably relied upon

20 the skill and judgment of Defendants, and upon said express warranty, in using the

21 aforesaid product. The warranty and representations were untrue in that the product caused

22 severe injury to Plaintiff ROSEANN MITCHELL and was unsafe and, therefore, unsuited

23 for the use in which it was intended and caused Plaintiff ROSEANN MITCHELL to sustain

24 damages and injuries herein alleged.

25

26

27

28

- 12 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

HERSHANDHERSH<br/>A Professional Corporation

50.

As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, said Defendants had ample and sufficient notice of the breach of said warranty.

51.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### [Fraud]

52.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-51, inclusive, of this Complaint.

53.

Defendants falsely and fraudulently represented to Plaintiff ROSEANN MITCHELL, her physicians, and to members of the general public that the aforesaid product was safe, effective, reliable, consistent, and better than the other similar products due to its small diameter for use with implantable ICDs when used in the manner intended by the manufacturer. The representations by said Defendants were in fact, false. The true facts include, but are not limited to the fact that the aforesaid product was not safe to be used in implantation of ICD devices, and were, in fact, dangerous to the health and body of Plaintiff ROSEANN MITCHELL.

54.

When the Defendants made these representations, they knew that they were false. Defendants made said representations with the intent to defraud and deceive plaintiff ROSEANN MITCHELL, with the intent to induce plaintiff to act in the manner herein alleged, that is to use the aforementioned product for implantation with the ICD.

- 13 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

55.

At the time Defendants made the aforesaid representations Plaintiff ROSEANN MITCHELL took the actions herein alleged, Plaintiff and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, plaintiff was induced to, and did, use the aforesaid product as herein described. If Plaintiff ROSEANN MITCHELL had known the actual facts, she would not have taken such action. The reliance of Plaintiff and her physicians upon Defendants representations were justified because said representations were made by individuals and entities that appeared to be in a position to know the true facts.

56.

As a result of Defendants fraud and deceit, Plaintiff was caused to sustain the herein described injuries and damages.

57.

In doing the acts herein alleged, the Defendants acted with oppression, fraud, and malice, and Plaintiff is therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future.  Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendants.

58.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SEVENTH CLAIM FOR RELIEF
### [Fraud by Concealment]

59.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-58, inclusive, of this Complaint.

- 14 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

60.

At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiffs and to their physicians, the true facts concerning the aforesaid product, SPRINT FIDELIS Leads, that is, that said product was dangerous and defective, lacking efficacy for its purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users including injuries and possible death. Defendants made the affirmative representations as set forth above to Plaintiffs and their physicians and the general public prior to the date SPRINT FIDELIS Leads were implanted in Plaintiff ROSEANN MITCHELL, while concealing material facts.

61.

At all times herein mentioned, Defendants willfully, and maliciously concealed facts as set forth above from Plaintiffs and their physicians, and therefore, Plaintiffs, with the intent to defraud as herein alleged.

62.

At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not reasonably relied upon said representations of safety and efficacy and utilized the SPRINT FIDELIS Leads for correction of heart rate. Defendants' representations were a substantial factor in Plaintiff utilizing the SPRINT FIDELIS Lead for correction of heart rate and rhythm.

63.

As a result of the concealment of the facts set forth above, Plaintiffs sustained injuries as hereinafter set forth.

- 15 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

64.

In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiffs are therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages, and to Defendant's wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

65.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## EIGHTH CAUSE OF ACTION
### [Deceptive Trade Practice]

66.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-65, inclusive, of this Complaint.

67.

Defendants acted deceptive and were misleading in concealing material defects with SPRINT FIDELIS Leads and adverse data from physicians and consumers in order to deceive doctors and patients like Plaintiffs into believing there were significantly fewer adverse events than there really were and are.

68.

Defendants manufactured and promoted both the safety and efficacy of SPRINT FIDELIS Leads to the public and to Plaintiffs' physician for the treatment of regulating heart rate without adverse cardiac events, including but not limited to, terrifying inappropriate defibrillation shocks, failure to deliver appropriate (life-giving) defibrillation therapy and death.

- 16 -

HERSHANDHERSH
A Professional Corporation

69.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### NINTH CAUSE OF ACTION
### [Negligent Misrepresentation]

70.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-69, inclusive, of this Complaint.

71.

At all relevant times herein, Defendants represented to Plaintiff ROSEANN MITCHELL and her physicians that the SPRINT FIDELIS Leads were safe to use to correct and regulate heart rate and rhythm knowing that the SPRINT FIDELIS Leads were defective and fractured causing injuries described herein.

72.

The Defendants made the aforesaid representations with no reasonable ground for believing them to be true when defendants own data showed the SPRINT FIDELIS Leads to be defective and dangerous when used in the intended manner.

73.

The aforesaid representations were made to the physician prescribing SPRINT FIDELIS Leads prior to the date it was prescribed to Plaintiffs and their physicians with the intent that Plaintiff and her physicians rely upon such misrepresentations about the safety and efficacy of SPRINT FIDELIS Leads. Plaintiff and her physicians did reasonably rely upon such representations that the aforesaid product was safe for use to aid in the treatment of irregular heart rate.

- 17 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

74.

The representations by said Defendants to Plaintiffs were false, and thereby caused Plaintiff's injuries described herein.

75.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## TENTH CAUSE OF ACTION
### [Intentional Infliction of Emotional Distress]

76.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-75, inclusive, of this Complaint.

77.

Defendants engaged in extreme and outrageous conduct, knowingly and/or recklessly marketing defective leads, knowingly and/or recklessly concealing a known and potentially fatal defect from Plaintiffs, and knowingly and/or recklessly misrepresenting the quality and usefulness of the SPRINT FIDELIS Leads.

78.

Defendants intended to cause Plaintiffs severe emotional distress, and/or acted with reckless disregard for the Plaintiffs emotional state. As a result of this outrageous conduct and/or reckless disregard for Plaintiff's emotional state, Plaintiffs did, in fact, incur, and continues to incur, severe emotional distress as a result of Defendants' misconduct.

79.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## ELEVENTH CLAIM FOR RELIEF
### ON BEHALF OF URIELA MITCHELL, PATRICIA HINES AND THOMAS MITCHELL
### [Negligent Infliction of Emotional Distress]

- 18 -

HERSH AND HERSH
A Professional Corporation

80.

Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1-79, inclusive, of this Complaint.

81.

Defendants carelessly and negligently manufactured, marketed and sold defective SPRINT FIDELIS Leads to Plaintiff ROSEANN MITCHELL causing her to suffer the herein described injuries from the defective and fractured SPRINT FIDELIS Leads.

82.

Plaintiffs were directly involved in and directly impacted by Defendants carelessness and negligence, in that Plaintiffs were witnesses to multiple episodes of terrifying shocks to Plaintiff ROSEANN MITCHELL.

83.

Defendants' misconduct as alleged above has caused Plaintiffs to suffer severe emotional trauma, physical consequences and long continued emotional disturbance. Plaintiffs are therefore entitled to compensatory damages and equitable and declaratory relief according to proof.

84.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

**PRAYER FOR RELIEF**

85.

Plaintiffs pray that a judgment be entered in favor of Plaintiffs in such aggregate sum as will fairly and reasonably compensate Plaintiffs for damages arising out of Defendants conduct as described herein. The conduct of Defendants, as alleged herein, was a direct, proximate and producing cause of the damages to Plaintiffs and the following general and specific damages:

- 19 -

1.     For general damages in a sum within the jurisdiction of this Court;

2.     For general damages for Plaintiffs Uriela Mitchell, Thomas Mitchell and Patricia Hines, according to proof;

3.     For medical, hospital, and incidental expenses, according to proof;

4.     For loss of earnings and for loss of earning capacity, according to proof;

5.     For punitive or exemplary damages;

6.     For such other relief as the Court deems just and proper.

DATED:   November 5, 2007

HERSH & HERSH
A Professional Corporation


By _Cynthia Brown_____
    CYNTHIA BROWN
    Attorneys for Plaintiffs

HERSHANDHERSH
A Professional Corporation

- 20 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**CT CORPORATION**
A WoltersKluwer Company

**Service of Process Transmittal**
11/15/2007
CT Log Number 512795580

TO:     Vicki Tersteeg
        Medtronic, Inc.
        MS: LC300, 710 Medtronic Parkway
        Minneapolis, MN 55432-5604

RE:     **Process Served in California**

FOR:    Medtronic, Inc. (Domestic State: MN)

**RECEIVED**

**NOV 1 9 2007**

LAW DEPARTMENT
MEDTRONIC, INC.

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | Roseann Mitchell, et al., Pltfs. vs. Medtronic, Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Cover Sheet, Notice to Plaintiff, Statement Form(s), Attachment(s), Stipulation Form |
| **COURT/AGENCY:** | San Francisco County- San Francisco, Superior Court, CA<br>Case # CGC07468894 |
| **NATURE OF ACTION:** | Product Liability Litigation - Personal Injury - Sprint Fidelis Leads |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/15/2007 at 14:20 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - file written response // 4/4/2008 at 9:00 a.m. - Case Management Conference |
| **ATTORNEY(S) / SENDER(S):** | Nancy Hersh<br>Hersh & Hersh<br>208 Opera Plaza<br>601 Van Ness Avenue<br>San Francisco, CA 94102<br>415 441 5544 |
| **ACTION ITEMS:** | Telephone, Vicki Tersteeg , 763-505-2671<br>SOP Papers with Transmittal, via  Fed Ex Priority Overnight , 798310819350<br>Email Notification, Vicki Tersteeg VICKI.ANN.TERSTEEG@MEDTRONIC.COM<br>Email Notification, Anne Sederstrom ANNE.SEDERSTROM@MEDTRONIC.COM |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Nancy Flores<br>818 West Seventh Street<br>Los Angeles, CA 90017<br>213-337-4615 |

Page 1 of  1 / JC

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

1  NANCY HERSH, ESQ., State Bar No. 49091
   MARK E. BURTON, JR., ESQ., State Bar No. 178400
2  RACHEL ABRAMS, ESQ., State Bar No. 209316
   CYNTHIA BROWN, ESQ., State Bar No. 248846
3  HERSH & HERSH
   A Professional Corporation
4  2080 Opera Plaza
   601 Van Ness Avenue
5  San Francisco, CA 94102-6388
   Telephone: (415) 441-5544
6  Facsimile:  (415) 441-7586
7
   Attorneys for Plaintiffs
8

**ENDORSED**
**F I L E D**
San Francisco County Superior Court

NOV 0 5 2007

GORDON PARK-LI, Clerk
BY: DEBORAH STEPPE
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

APR 0 4 2008  -9:00 AM

DEPARTMENT 212

9

10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                     COUNTY OF SAN FRANCISCO

13

14  ROSEANN MITCHELL, URIELA          )   CGC-07-468894
    MITCHELL, THOMAS MITCHELL         )
15  and PATRICIA HINES,               )   CASE NUMBER
                                      )
16              Plaintiffs,           )   COMPLAINT FOR DAMAGES AND
                                      )   DEMAND FOR JURY TRIAL
17                                    )
    vs.                               )   [PRODUCTS LIABILITY]
18                                    )
    MEDTRONIC, INC., McKESSON         )   1.  Strict Liability-Failure to Warn
19  CORPORATION and DOES ONE          )   2.  Strict Product Liability
    through FIFTY, inclusive,         )   3.  Negligence
20                                    )   4.  Breach of Implied Warranty
                                      )   5.  Breach of Express Warranty
21              Defendants.           )   6.  Fraud
                                      )   7.  Fraud by Concealment
22                                    )   8.  Deceptive Trade Practice
                                      )   9.  Negligent Misrepresentation
23                                    )   10. Intentional Infliction of Emotional
                                      )       Distress
24                                    )   11. Negligent Infliction of Emotional
                                      )       Distress
25                                    )

26

27

28

-1-

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

HERSH AND HERSH
A Professional Corporation

SUM-100

## SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT**
*(AVISO AL DEMANDADO):*
MEDTRONIC, INC., McKESSON CORPORATION and DOES
ONE through FIFTY, inclusive

[X] DOES ___1___ TO _50_

**YOU ARE BEING SUED BY PLAINTIFF**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ROSEANN MITCHELL, URIELA MITCHELL, THOMAS
MITCHELL and PATRICIA HINES

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | CASE NUMBER: (Número del Caso): |
|---|---|
| The name and address of the court is: (El nombre y dirección de la corte es): | CGC-07-468894 |

SAN FRANCISCO SUPERIOR COURT
400 McAllister Street
San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

| | CALIFORNIA STATE BAR NO.: | TELEPHONE NO.: | FACSIMILE NO.: |
|---|---|---|---|
| NANCY HERSH | 49091 | (415) 441-5544 | (415) 441-7586 |

HERSH & HERSH
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6388

DATE: NOV 0 5 2007          Gordon Park-Li    Clerk, by   Deborah Steppe          , Deputy
(Fecha)                              (Secretario)                              (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [X] on behalf of (specify): Medtronic, Inc.

    under: [X] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
           [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
           [ ] CCP 416.40 (association or partnership) [ ] CCP 416.80 (authorized person)
           [ ] other (specify):
4. [ ] by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

4144

MacForms (909) 595-4382

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State number, and address): | | FOR COURT USE ONLY |
|---|---|---|
| NANCY HERSH | CALIFORNIA STATE BAR NO.: 49091 | **ENDORSED**<br>**F I L E D**<br>San Francisco County Superior Court<br><br>NOV 0 5 2007<br><br>GORDON PARK-LI, Clerk<br>BY: DEBORAH STEPPE<br>Deputy Clerk |
| HERSH & HERSH | | |
| 601 Van Ness Avenue, Suite 2080 | | |
| San Francisco, CA 94102-6388 | | |
| TELEPHONE NO.: (415) 441-5544    FAX NO.: (415) 441-7586 | | |
| ATTORNEY FOR (Name): Plaintiffs | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME: ROSEANN MITCHELL, ET AL. v. MEDTRONIC, INC., ET AL.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | CGC-07-468894<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [X] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action (specify): Eleven (11)
5. This case [ ] is [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: November 5, 2007

CYNTHIA BROWN
(TYPE OR PRINT NAME)                    ▶    *Cynthia Brown*
                                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|
| MscForms (509) 586-4582 | | |

4144

CASE NUMBER: CGC-07-468894  ROSEANN MITCHELL et al VS. MEDTRONIC, INC. et al

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

|  |  |
|---|---|
| **DATE:** | **APR-04-2008** |
| **TIME:** | **9:00AM** |
| **PLACE:** | **Department 212** |
|  | **400 McAllister Street** |
|  | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL. (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

CM-110

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(name, State Bar number, and address)*:<br><br>TELEPHONE NO.:     FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| **(Check one):** ☐ UNLIMITED CASE<br>(Amount demanded<br>exceeds $25,000)  ☐ LIMITED CASE<br>(Amount demanded is $25,000<br>or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:          Time:          Dept.:          Div.:          Room:

Address of court *(if different from the address above)*:

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint     *(describe, including causes of action)*:

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courtinfo.ca.gov

American LegalNet, Inc.<br>www.FormsWorkflow.com

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.   Provide a brief statement of the case, including any damages. (If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)

☐ (If more space is needed, check this box and attach a page designated as Attachment 4b.)

5.  Jury or nonjury trial
    The party or parties request ☐ a jury trial ☐ a nonjury trial (if more than one party, provide the name of each party requesting a jury trial):

6.  Trial date
    a. ☐ The trial has been set for (date):
    b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint (if not, explain):

    c.   Dates on which parties or attorneys will not be available for trial (specify dates and explain reasons for unavailability):

7.  Estimated length of trial
    The party or parties estimate that the trial will take (check one):
    a. ☐ days (specify number):
    b. ☐ hours (short causes) (specify):

8.  Trial representation (to be answered for each party)
    The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
    a.   Attorney:
    b.   Firm:
    c.   Address:
    d.   Telephone number:
    e.   Fax number:
    f.   E-mail address:
    g.   Party represented:
    ☐ Additional representation is described in Attachment 8.

9.  Preference
    ☐ This case is entitled to preference (specify code section):

10. Alternative Dispute Resolution (ADR)
    a.   Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b. ☐ All parties have agreed to a form of ADR. ADR will be completed by (date):
    c. ☐ The case has gone to an ADR process (indicate status):

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.    The party or parties are willing to participate in *(check all that apply)*:

    (1) ☐ Mediation

    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) ☐ Binding judicial arbitration

    (5) ☐ Binding private arbitration

    (6) ☐ Neutral case evaluation

    (7) ☐ Other *(specify)*:

    e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

    f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

    g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**

    ☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**

    a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

    b.    Reservation of rights: ☐ Yes ☐ No

    c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**

    Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

    ☐ Bankruptcy    ☐ Other *(specify)*:

    Status:

**14. Related cases, consolidation, and coordination**

    a. ☐ There are companion, underlying, or related cases.

        (1) Name of case:

        (2) Name of court:

        (3) Case number:

        (4) Status:

    ☐ Additional cases are described in Attachment 14a.

    b. ☐ A motion to ☐ consolidate ☐ coordinate    will be filed by *(name party)*:

**15. Bifurcation**

    ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**

    ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**

Previous case management orders in this case are *(check one)*: ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached *(if any)*:** _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

| _____ | ▶ _____ |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

| _____ | ▶ _____ |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

☐ Additional signatures are attached



# Superior Court of California
## County of San Francisco

# Judicial Mediation Program

### Introducing a new court alternative dispute resolution program that provides judicial mediation of complex civil cases

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David L. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable John J. Conway
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Curtis E. A. Karnow
The Honorable Patrick J. Mahoney

The Honorable Tomar Mason
The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Evans Quidachay
The Honorable A. James Robertson, II
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

12/15/06

# Alternative Dispute Resolution (ADR) Information Package

# Alternatives to Trial

# Here are some other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint.  (CRC 201.9(c))

**Superior Court of California
County of San Francisco**

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

# Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can be speedier.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can permit more participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR can be flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- ***ADR can reduce stress.*** There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- ***ADR can be more satisfying.*** For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

# Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for civil matters; each program is described below:

1)   Judicial arbitration
2)   Mediation
3)   The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called <u>judicial arbitration</u>. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through <u>private arbitration</u>. Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

# MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

ADR-I  1/06 (bc)                                                    Page 5

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

## Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

## Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

### Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-8913

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

## Cost

All parties must submit a $200 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 982-1600.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution Coordinator,
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
### 400 McAllister Street, San Francisco, CA 94102-4514

|  | Case No. _____ |
|---|---|
| Plaintiff | **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** |
| v. | |
| Defendant | |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ **Private Mediation**    ☐ **Mediation Services of BASF**    ☐ **Judicial Mediation**
☐ **Binding arbitration**    Judge _____
☐ **Non-binding judicial arbitration**    Judge _____
☐ **BASF Early Settlement Program**
☐ **Other ADR process (describe)** _____

**Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  3/06                **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

**EXHIBIT B**

1    Sonja S. Weissman (SBN 154320)
     Dana A. Blanton (SBN 232373)
2    REED SMITH LLP
     1999 Harrison St., Suite 2400
3    Oakland, CA 94612
     Telephone:    510.763.2000
4    Facsimile:    510.273.8832

5    Michael K. Brown (SBN 104252)
     Ginger F. Heyman (SBN 162908)
6    REED SMITH LLP
     355 South Grand Avenue, Suite 2900
7    Los Angeles, CA 90071-1514
     Telephone:    213.457.8000
8    Facsimile:    213.457.8080

9    Attorneys for Defendant
     Medtronic, Inc.

10

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

DEC 1 3 2007

GORDON PARK-LI, Clerk
BY: _____MARIA SANCHEZ_____
                      Deputy Clerk

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                  FOR THE COUNTY OF SAN FRANCISCO

13

14

15   ROSEANN MITCHELL, et al.,              No.: CGC-07-468894

                     Plaintiffs,            DEFENDANT MEDTRONIC, INC.'S
16                                          ANSWER TO COMPLAINT

17        vs.                               Compl. Filed:    November 5, 2007

18   MEDTRONIC, INC., et al.,

                     Defendants.
19

20

21

22

23

24

25

26

27

28

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware*

1    Defendant Medtronic, Inc. ("Medtronic"), hereby answers Plaintiffs' Complaint as follows:

2

3    Answering Plaintiffs' unverified Complaint, Medtronic denies each and every allegation

4    contained therein and denies that by reason of any act or omission by Medtronic, its agents,

5    employees, or independent contractors, Plaintiffs were injured or damaged in any sum, or at all.

6

7    **AFFIRMATIVE DEFENSES**

8

9    Medtronic, while reserving the right to assert other defenses as discovery proceeds, and

10   without assuming the burden of proof when the burden of proof rests on Plaintiff, asserts the

11   following separate and independent affirmative defenses in further opposition to the Complaint:

12

13   **FIRST AFFIRMATIVE DEFENSE**

14

15   Plaintiffs' Complaint, and each count and claim contained therein, fails to state a claim upon

16   which relief can be granted.

17

18   **SECOND AFFIRMATIVE DEFENSE**

19

20   Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation

21   and/or the doctrine of laches.

22

23   **THIRD AFFIRMATIVE DEFENSE**

24

25   Plaintiffs' claims are barred, in whole or in part, by the doctrines of estoppel, unclean hands

26   and waiver.

27

28   **FOURTH AFFIRMATIVE DEFENSE**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Plaintiffs' claims are barred, in whole or in part, by the doctrines of res judicata, collateral

2    estoppel, issue preclusion and/or claim preclusion.

3

4                              **FIFTH AFFIRMATIVE DEFENSE**

5

6    Plaintiffs' claims are barred, in whole or in part, because the Food and Drug Administration

7    has exclusive or primary jurisdiction over the matters asserted in the Complaint.

8

9                              **SIXTH AFFIRMATIVE DEFENSE**

10

11    Plaintiffs' claims are preempted, in whole or in part, by federal laws and regulations,

12    including without limitation those governing the labeling, advertisement and sale of medical devices.

13

14                            **SEVENTH AFFIRMATIVE DEFENSE**

15

16    Plaintiffs' claims are preempted, in whole or in part, by the deference state law gives to

17    discretionary actions by the Food and Drug Administration under the Food, Drug and Cosmetic Act,

18    and the Medical Device Amendments thereto.

19

20                             **EIGHTH AFFIRMATIVE DEFENSE**

21

22    Plaintiffs' claims are barred, in whole or in part, because there is no private right of action

23    under the Food, Drug and Cosmetic Act for claims such as those asserted by Plaintiff.

24

25                              **NINTH AFFIRMATIVE DEFENSE**

26

27    Plaintiffs' claims are barred, in whole or in part, because at all times relevant to the

28    Complaint, Medtronic met or exceeded the requisite standard of care.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

**TENTH AFFIRMATIVE DEFENSE**

2

3     Plaintiffs' claims are barred, in whole or in part, because Medtronic did not owe any duty to

4     Plaintiffs.

5

6     **ELEVENTH AFFIRMATIVE DEFENSE**

7

8     Plaintiffs' claims are barred, in whole or in part, because no act or omission on Medtronic's

9     part caused or contributed to the alleged injuries and damages described in the Complaint.

10

11     **TWELFTH AFFIRMATIVE DEFENSE**

12

13     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' alleged injuries, if any,

14     were the result of intervening and/or superseding causes.

15

16     **THIRTEENTH AFFIRMATIVE DEFENSE**

17

18     Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' comparative or contributory

19     fault or negligence.

20

21     **FOURTEENTH AFFIRMATIVE DEFENSE**

22

23     Plaintiffs' claims are barred, in whole or in part, because no action or inaction by Medtronic

24     was the proximate cause of Plaintiffs' alleged damages, if any.

25

26     **FIFTEENTH AFFIRMATIVE DEFENSE**

27

28     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' alleged damages, if any,

Defendant Medtronic, Inc.'s Answer to Complaint

1  were caused in whole or in part by the acts or omissions of Plaintiffs or third parties over whom

2  Medtronic had no control or authority.

3

4  **SIXTEENTH AFFIRMATIVE DEFENSE**

5

6  Plaintiffs' claims are barred, in whole or in part, because Plaintiff assumed the risk of her

7  alleged injuries, if any, and engaged in the activities alleged in the Complaint after giving her

8  informed consent.

9

10  **SEVENTEENTH AFFIRMATIVE DEFENSE**

11

12  Plaintiffs' claims are barred, in whole or in part, by the learned intermediary doctrine,

13  because Medtronic provided adequate warnings to learned intermediaries.

14

15  **EIGHTEENTH AFFIRMATIVE DEFENSE**

16

17  Plaintiffs' claims are barred, in whole or in part, because any alleged injuries or damages

18  sustained by Plaintiff may have been caused by the misuse or abuse of Medtronic's products by

19  Plaintiff or other persons.

20

21  **NINETEENTH AFFIRMATIVE DEFENSE**

22

23  Plaintiffs' claims are barred, in whole or in part, because Medtronic's products may have

24  been substantially changed after they left Medtronic's control and before Plaintiffs suffered any

25  alleged injuries or damages.

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TWENTIETH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because any alleged injuries or damages sustained by Plaintiff may have been caused by the alteration and/or method of implantation and/or maintenance of Medtronic's products after they left Medtronic's control.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because any alleged injuries or damages sustained by Plaintiff may have been the direct result of Plaintiffs' pre-existing medical conditions, sub-medical conditions, natural causes, or the result of other circumstances over which Medtronic had no control and for which Medtronic is not responsible.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because any alleged injuries or damages sustained by Plaintiffs may be the result of an unforeseeable series of events over which Medtronic had no control, and as such, constitutes acts of God for which Medtronic cannot be held liable.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because any alleged injuries or damages sustained by Plaintiffs may be the result of idiosyncratic reactions by Plaintiffs that were not reasonably foreseeable and for which Medtronic cannot be held liable.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because the risks associated with the use of

Defendant Medtronic, Inc.'s Answer to Complaint

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

the medical devices at issue, if any, are outweighed by the utility and benefits such devices provide.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the medical device at issue was not unreasonably dangerous or defective, was suitable for the purpose for which it was intended, and was distributed with adequate and sufficient warnings.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the methods, standards and techniques of designing, manufacturing and labeling the medical devices at issue complied with and conformed to the generally recognized state of the art at the time such devices were designed, manufactured and labeled.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs fail to assert a feasible safer design for Medtronic's products alleged to be defective.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Medtronic acted reasonably and in good faith at all times material herein, based on all relevant facts and circumstances known by Medtronic at the time it acted.

Defendant Medtronic, Inc.'s Answer to Complaint

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs did not rely reasonably on any act, omission or representation made by Medtronic.

**THIRTIETH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because there was no defect in the device at issue at the time it left Medtronic's possession.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because to the extent Plaintiffs allege that Medtronic failed to warn about alleged defects in the device at issue or other alleged causes of Plaintiffs' injuries or damages, if any, the doctors and other health care providers associated with the device were or should have been aware of any risks or hazards associated with it, and to the extent that such doctors and health care providers failed to advise, inform or warn Plaintiff of such risks or hazards, Medtronic cannot be held responsible.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, to the extent that they have failed to plead actual injury.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, to the extent that the alleged injuries are too remote from Medtronic's conduct to state a claim.

Defendant Medtronic, Inc.'s Answer to Complaint

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the economic loss doctrine.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

Medtronic adopts and incorporates by reference as if fully set out herein any and all defenses which are or may become available to it under the Restatement (Second) of Torts § 402A and all comments thereto, and the Restatement (Third) of Torts §§ 1-21 and comments thereto.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the principles set forth in the Restatement (Second) of Torts § 388, Comment n, and any similar doctrines and/or principle in the Restatement (Third) of Torts.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the principles set forth in the Restatement (Second) of Torts § 402A, Comment k, and the Restatement (Third) of Torts: Products Liability § 6.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because to the extent Plaintiffs alleges failure to warn by Medtronic, the doctors and other health care providers who were associated with the device at issue, or were or should have been aware of any risk and/or hazard that Plaintiff alleges rendered the device defective and allegedly caused Plaintiffs' damages, if any, failed to warn Plaintiff of such risks and/or hazards.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### THIRTY-NINTH AFFIRMATIVE DEFENSE

Plaintiffs' warranty-based claims are barred, in whole or in part, because Medtronic did not make or breach any warranties that are applicable to Plaintiff.

### FORTIETH AFFIRMATIVE DEFENSE

Plaintiffs' warranty-based claims are barred, in whole or in part, by Plaintiffs' failure to give proper or timely notice of any alleged defect or breach of warranty.

### FORTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' warranty-based claims are barred, in whole or in part, because Plaintiffs were not in privity with Medtronic.

### FORTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' warranty-based claims are barred, in whole or in part, by any and all express conditions, disclaimers, modifications or exclusions made by Medtronic.

### FORTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' warranty-based claims are barred, in whole or in part, by Plaintiffs' lack of reliance on any such warranties.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' warranty-based claims are barred, in whole or in part, by Plaintiffs' failure to

– 9 –

1  satisfy all conditions precedent or subsequent to the enforcement of any such alleged warranties.

2

3  **FORTY-FIFTH AFFIRMATIVE DEFENSE**

4

5  Plaintiffs' claims are barred, in whole or in part, because the promotion of products sold or

6  manufactured by Medtronic is protected by the First Amendment of the United States Constitution

7  and similar provisions in applicable state constitutions.

8

9  **FORTY-SIXTH AFFIRMATIVE DEFENSE**

10

11  Plaintiffs' claims are barred, in whole or in part, to the extent that they lack standing to

12  pursue the claims alleged against Medtronic.

13

14  **FORTY-SEVENTH AFFIRMATIVE DEFENSE**

15

16  Plaintiffs' claims are barred, in whole or in part, because Medtronic did not violate any

17  statute or law, as alleged by Plaintiff.

18

19  **FORTY-EIGHTH AFFIRMATIVE DEFENSE**

20

21  Because have failed to plead fraud claims with particularity, their fraud claims must be

22  dismissed.

23

24  **FORTY-NINTH AFFIRMATIVE DEFENSE**

25

26  Plaintiffs' claims under state consumer fraud and unlawful or deceptive trade practice acts

27  are barred to the extent that Plaintiffs have not alleged any misrepresentation or misleading

28  statement with the specificity required.

Defendant Medtronic, Inc.'s Answer to Complaint

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## FIFTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Medtronic is entitled to the benefit of all defenses and presumptions contained in, or arising from, any rule of law or statute of any state whose substantive law controls the action.

## FIFTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, reduced and/or limited pursuant to applicable statutory and common law regarding limitation of awards, caps on recovery and setoffs.

## FIFTY-SECOND AFFIRMATIVE DEFENSE

Any verdict or judgment that might be recovered by Plaintiffs must be reduced by those amounts that have already indemnified Plaintiffs, or will in the future with reasonable certainty indemnify Plaintiffs, in whole or in part, for any past or future claimed economic loss, from any collateral source including but not limited to insurance, social security, workers' compensation or employee benefit programs.

## FIFTY-THIRD AFFIRMATIVE DEFENSE

In the event that Plaintiffs have sustained damages as alleged in the Complaint, which Medtronic denies, discovery or investigation may reveal that Plaintiffs' claims are barred or reduced to the extent Plaintiffs failed to mitigate any damages allegedly sustained.

## FIFTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for punitive or exemplary damages are barred or reduced by applicable law

– 11 –

1  or statute, or in the alternative, are unconstitutional insofar as they violate the due process

2  protections afforded by the United States Constitution, the excessive fines clause of the Eighth

3  Amendment to the United States Constitution, and any other applicable provisions of the United

4  States Constitution or any applicable state constitution.  Any law, statute or other authority

5  purporting to permit the recovery of punitive or exemplary damages in this case is unconstitutional,

6  facially and/or as applied to Medtronic.

7

8  **FIFTY-FIFTH AFFIRMATIVE DEFENSE**

9

10  Plaintiffs' claims for punitive or exemplary damages are barred, in whole or in part, because

11  such damages are not recoverable for the causes of action set forth in the Complaint, or in the

12  alternative, the allegations of each cause of action in the Complaint are legally insufficient to support

13  a claim for punitive or exemplary damages.

14

15  **FIFTY-SIXTH AFFIRMATIVE DEFENSE**

16

17  Plaintiffs' claims for punitive or exemplary damages are barred, in whole or in part, because

18  Medtronic did not act with the requisite level of conduct to be subjected to or that would otherwise

19  support any punitive or exemplary damages in this action.

20

21  **FIFTY-SEVENTH AFFIRMATIVE DEFENSE**

22

23  Plaintiffs are not entitled to attorneys' fees under any act or theory forming the basis of any

24  of Plaintiffs' claims.

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 12 –

Defendant Medtronic, Inc.'s Answer to Complaint

## FIFTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for negligent infliction for emotional distress are either: (1) duplicative of one or more other claims asserted in the Complaint or (2) do not satisfy the prerequisites for such claims as bystanders.

## FIFTY-NINTH AFFIRMATIVE DEFENSE

Medtronic hereby gives notice that it intends to rely upon any other defenses that may become available or apparent during the discovery proceedings in this matter and hereby reserves its right to amend its Answer to assert any such defense.

WHEREFORE, having fully answered and defended, Medtronic d prays for judgment as follows:

1.    That Plaintiffs take nothing by the Complaint;

2.    That judgment be entered for Medtronic and against Plaintiffs on each and every claim set forth in the Complaint;

3.    That Medtronic recover its costs of suit; and

4.    For such other and further relief as the Court deems just and proper.

DATED:  December 13, 2007

REED SMITH LLP

By _____
Sonja S. Weissman
Dana A. Blanton
Attorneys for Defendant
Medtronic, Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DOCSOAK-9891333.2

— 13 —

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is REED SMITH LLP, 1999 Harrison Street, Suite 2400, Oakland, CA 94612-3572. On December 13, 2007, I served the following document(s) by the method indicated below:

### DEFENDANT MEDTRONIC, INC.'S ANSWER TO COMPLAINT

☐ by transmitting via facsimile on this date from fax number +1 510 273 8832 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 PM and was reported complete and without error. The transmission report, which is attached to this proof of service, was properly issued by the transmitting fax machine. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal.R.Ct 2003(3).

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Oakland, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration.

☐ by placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below. A signed proof of service by the process server or delivery service will be filed shortly.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below. A copy of the consignment slip is attached to this proof of service.

☐ by transmitting via email to the parties at the email addresses listed below:

**Attorneys for Plaintiff**

Nancy Hersh, Esq.
Mark E. Burton, Jr., Esq.
Rachel Abrams, Esq.
Cynthia Brown, Esq.
Hersh & Hersh
2080 Opera Plaza
601 Van Ness Avenue
San Francisco, CA 94102
Telephone: (415) 441-5544

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on December 13, 2007, at Oakland, California.

_____

Trisha Suzette Hooper

DOCSOAK-9594935.1

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**EXHIBIT C**



FILED _____ ENTERED
_____ LODGED _____ RECEIVED

NOV 2 7 2002

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY
LITIGATION,

MDL NO. 1407

ORDER DENYING PLAINTIFF'S
MOTION TO REMAND

This document relates to:

Barnett, et al. v. American
Home Products Corp., et al.,
No. C02-423R

THIS MATTER comes before the court on the motion of plain-
tiffs to remand the case to state court in Mississippi.  Having
reviewed the papers filed in support of and in opposition to this
motion, the court rules as follows:

I.  BACKGROUND

Plaintiffs purchased a variety of over-the-counter drugs
including, but not limited to, products sold under the trade
names "Robitussin," "Alka-Seltzer Plus," "Dimetapp," "Tavist D,"
"BC," "Triaminic," "Contac," "Comtrex," and "Equate Tussin CF."
All of these products contained the ingredient phenylpro-
panolamine ("PPA").  The individuals later consumed the medica-
tion and suffered unidentified types of injuries.  In June 2001,
plaintiffs filed an amended complaint in Mississippi state court
linking the PPA in the medicine with the injuries sustained.

ORDER
Page - 1 -

1    The complaint alleges numerous causes of action against both
2  manufacturers and distributors of PPA-containing products, as
3  well as several retail stores that sold those products.  One of
4  the stores named as a defendant, Bill's Dollar Stores, Inc.,
5  d/b/a Bill's Dollar Store ("Bill's Dollar Store"), is a Missis-
6  sippi corporation.  Two of the six total plaintiffs purchased
7  PPA-containing products from Bill's Dollar Store.[1]

8    Defendants removed the complaint to federal court alleging
9  that plaintiffs fraudulently joined Bill's Dollar Store.  Plain-
10 tiffs moved to remand to state court.  The case was later trans-
11 ferred to this court as part of a multi-district litigation
12 ("MDL").

## II.  ANALYSIS

14   A plaintiff cannot defeat federal jurisdiction by fraudu-
15 lently joining a non-diverse party.  As an MDL court sitting in
16 the Ninth Circuit, this court applies the Ninth Circuit's fraudu-
17 lent joinder standard to the motion to remand.  See, e.g., In re
18 Diet Drugs Prods. Liab. Litig., 220 F. Supp. 2d 414, 423 (E.D.
19 Pa. 2002); In re Bridgestone/Firestone, 204 F. Supp. 2d 1149,
20 1152 n.2 (S.D. Ind. 2002); In re Tobacco/Gov'tal Health Care
21 Costs Litig., 100 F. Supp. 2d 31, 34 n.1 (D. D.C. 2000); In re

22  ───────────────

23   [1] Defendants assert the misjoinder of these plaintiffs'
   claims and request that the court sever and deny remand as to the
24 four plaintiffs who did not purchase any products from Bill's
   Dollar Store, or from any other Mississippi store.  However,
25 because, as discussed below, the court denies remand as to all
   plaintiffs named in this action, the court need not address the
26 question of misjoinder at this time.

ORDER
Page - 2 -

1   _Ford Motor Co. Bronco II Prods. Liab. Litig._, MDL-991, 1996 U.S.

2   Dist. LEXIS 6769, at *2-4 (E.D. La. May 16, 1996).[2]  Under this

3   standard, joinder of a non-diverse party is deemed fraudulent

4   "'[i]f the plaintiff fails to state a cause of action against a

5   resident defendant, and the failure is obvious according to the

6   settled rules of the state.'"  _Morris v. Princess Cruises, Inc._,

7   236 F.3d 1061, 1067 (9th Cir. 2001) (quoting _McCabe v. General_

8   _Foods Corp._, 811 F.2d 1336, 1339 (9th Cir. 1987)).[3]

9        The propriety of removal to federal court is determined from

10  the allegations in the complaint at the time of removal.  _See_

11  _Ritchey v. Upjohn Drug Co._, 139 F.3d 1313, 1318 (9th Cir. 1998)

12  However, in the case of fraudulent joinder, the defendant "'is

13  entitled to present the facts showing the joinder to be fraudu-

14  lent.'"  _Id._ (quoting _McCabe_, 811 F.2d at 1339).  _See also Morris_

15  ─────────────────────────

16       [2] _See generally Menowitz v. Brown_, 991 F.2d 36, 40-41 (2d
     Cir. 1993); _In Re Korean Airlines Disaster_, 829 F.2d 1171, 1174-

17  76 (D.C. Cir. 1987).

18       [3]However, as a practical matter, application of the Fifth
     Circuit's fraudulent joinder standard would not alter the court's

19  conclusion.  _See Badon v. RJR Nabisco, Inc._, 224 F.3d 382, 393
     (5th Cir. 2000) (remand is denied where there is "no reasonable

20  basis for predicting that plaintiffs might establish liability .
     . . against the in-state defendants.")  For example, recent MDL

21  courts utilized fraudulent joinder standards similar, and in one
     case identical, to the Fifth Circuit's standard in deeming

22  Mississippi pharmacies and their employees fraudulently joined
     for reasons similar to those expressed in this opinion.  _See In_

23  _re Diet Drugs Prods. Liab. Litig._, 220 F. Supp. 2d at 423-24
     (noting that there had been "a pattern of pharmacies being named

24  in complaints, but never pursued to judgment, typically being
     voluntarily dismissed at some point after the defendants' ability

25  to remove the case has expired"); _In re Rezulin Prods. Liab._

26  _Litig._, 133 F. Supp. 2d 272, 279 & n.3, 288-92 (S.D.N.Y. 2001).

    ORDER
    Page - 3 -

1 | 236 F.3d at 1067-68 (citing Cavallini v. State Farm Mut. Auto.

2 | Ins. Co., 44 F.3d 256, 263 (5th Cir. 1995) for the proposition

3 | that the court may "'pierc[e] the pleadings'" and consider

4 | "summary judgment-type evidence.")

5 | Defendants allege that plaintiffs fraudulently joined Bill's

6 | Dollar Store, while plaintiffs claim the existence of legitimate

7 | causes of action against Bill's Dollar Store, including products

8 | liability, negligence, misrepresentation, and implied warranty

9 | claims.  The parties also argue as to the relevance of a bank-

10 | ruptcy petition filed by Bill's Dollar Store prior to the filing

11 | of this suit.

12 | A.    Products Liability

13 | The complaint contains failure to warn and design defect

14 | allegations pursuant to the Mississippi Products Liability Act.

15 | Miss. Code Ann. § 11-1-63.  Under the Products Liability Act,

16 | plaintiff must show that at the time the product left the control

17 | of the manufacturer or seller, it was defective in failing to

18 | contain adequate warnings or instructions, and/or was designed in

19 | a defective manner.  Miss. Code Ann. § 11-1-63 (a)(i)(2)-(3).

20 | Plaintiff must also show that the manufacturers and sellers knew,

21 | or in light of reasonably available knowledge or the exercise of

22 | reasonable care should have known, about the danger that caused

23 | the alleged damage.  Miss. Code Ann. § 11-1-63 (c)(i),(f)(i).[4]

24 | _____

25 | [4] See also Huff v. Shopsmith, Inc., 786 So.2d 383, 387 (Miss.
2001)("With the adoption of 11-1-63, common law strict liability,
26 | as laid out in State Stove Mfg. Co. v. Hodges, 189 So.2d 113

ORDER
Page - 4 -

1    Plaintiffs allege in the complaint that "defendants" or "all
2  defendants" knew or should have known of dangers associated with
3  PPA.  Moreover, plaintiffs specifically aver this knowledge or
4  reason to know on the part of the retailer defendants, including
5  Bill's Dollar Store.  However, the court finds that no factual
6  basis can be drawn from the complaint that Bill's Dollar Store
7  had knowledge or reason to know of any dangers allegedly associ-
8  ated with PPA.

9    First, the complaint utilizes the plural "defendants" in a
10 number of allegations that one could not reasonably interpret to
11 include Bill's Dollar Store.  See, e.g., Louis v. Wyeth-Ayerst
12 Pharm., Inc., No. 5:00CV102LN, slip op. at 5-9 (S.D. Miss. Sep.
13 25, 2000) (finding products liability allegations lodged against
14 "defendants" conclusory where there was no factual support for
15 conclusion that Mississippi pharmacies had knowledge or reason to
16 know of alleged dangers associated with various diet drugs).[5]

17 _____

18 (Miss. 1966), is no longer the authority on the necessary
   elements of a products liability action.")

19
20 [5] See also In re Diet Drugs Prods. Liab. Litig., 220 F. Supp.
   2d at 424 (finding complaints, including failure to warn,
21 negligence, breach of warranty, and strict liability claims,
   devoid of specific allegations against Mississippi pharmacies and
22 "filled instead with general statements levied against all
   defendants, which most properly can be read as stating claims
23 against drug manufacturers."); In re Rezulin Products Liab.
   Litig., 133 F. Supp. 2d at 291 (finding improper joinder in case
24 where Mississippi pharmacies were lumped in with manufacturers
   and acts alleged, including failure to warn, breach of warranty,
25 and fraud, were attributed to "'defendants' generally", but
   never connected to the pharmacies); accord Badon, 224 F.3d at
26 391-93 ("While the amended complaint does often use the word

ORDER
Page - 5 -

1  For example, the complaint describes "defendants" as members of

2  the Non-Prescription Drug *Manufacturers* Association ("NDMA").

3  Through this association, "defendants" purportedly participated

4  in numerous discussions relating to the safety of PPA over the

5  past two decades, had representatives sit on the NDMA PPA Task

6  Force, and funded relevant studies.  In other words, plaintiffs,

7  in significant part, demonstrate "defendants'" knowledge as to

8  risks allegedly posed by PPA through activities engaged in by

9  manufacturer defendants alone.

10     Indeed, while "defendants" are alleged to have been aware or

11  to have had responsibility for awareness of numerous *scientific*

12  journal articles, incident reports, medical textbooks, and other

13  reports containing information as to risks of PPA consumption,

14  general medical practitioners are excluded from this awareness

15  and described as being not "fully informed."  The complaint

16  supplies no factual support for a conclusion that a dollar store

17  possessed medical and scientific knowledge beyond that possessed

18  by medical practitioners.

19     Second, the complaint specifically lays the responsibility

20  for allegedly concealing dangers posed by PPA on the manufacturer

21  defendants.  For example, the complaint alleges that the manufac-

22  turer defendants concealed material facts regarding PPA through

23  product packaging, labeling, advertising, promotional campaigns

24  _____

25  'defendants,' frequently it is evident that such usage could not
   be referring to the 'Tobacco Wholesalers.'"; finding conspiracy
26  allegations against Louisiana defendants entirely general).

ORDER
Page - 6 -

1    and materials, and other methods.  This allegation directly

2    undermines and contradicts the idea that Bill's Dollar Store had

3    knowledge or reason to know of alleged defects.  See, e.g.,

4    Louis, slip op. at 4-5 (finding complaint's "major theme" to

5    consist of the "manufacturers' intentional concealment of the

6    true risks of the drug(s), coupled with dissemination through

7    various media of false and misleading information of the safety

8    of the drug(s) at issue, [which belied] any suggestion of knowl-

9    edge, or reason to know by [the] resident defendants.") Cf. In re

10   Rezulin Products Liab. Litig., 133 F. Supp. 2d 272, 290 (S.D.N.Y.

11   2001) (finding Mississippi pharmacies facing failure to warn

12   claims fraudulently joined where "the theory underlying the

13   complaints [was] that the manufacturer defendants hid the dangers

14   of Rezulin from plaintiffs, the public, physicians, distributors

15   and pharmacists -- indeed from everyone.")

16        In sum, the court concludes that one could not reasonably

17   read the complaint to support the idea that the retailer defen-

18   dants had knowledge or reason to know of any dangers allegedly

19   associated with PPA.  Indeed, reading the complaint as a whole,

20   this allegation reveals itself as directed towards the manufac-

21   turer defendants alone.  As such, the court finds that plaintiffs

22   fail to state a products liability cause of action against Bill's

23   Dollar Store.[6]

24   _____

25        [6] The complaint once alludes to an "alternative" breach of
     express warranty claim under the Products Liability Act.  See
26   Miss. Code Ann. § 11-1-63 (a)(i)(4) (requiring a showing that the

ORDER
Page - 7 -

1  B.    Negligence and Misrepresentation

2       The complaint alleges negligence and misrepresentation by

3  Bill's Dollar Store.  A negligence cause of action also requires

4  a showing of knowledge or reason to know on the part of the

5  seller.  See, e.g., R. Clinton Constr. Co. v. Bryant & Reaves,

6  Inc., 442 F. Supp. 838, 851 (N.D. Miss. 1977) ("The rule is well

7  settled that in order to fasten liability upon a party for

8  negligence, it must be shown by a preponderance of the evidence

9  that he knew or through the exercise of reasonable care should

10 have known that his selection of a [product] would cause damage

11 to his customer.")[7]  A misrepresentation cause of action requires

12

13 seller breached an express warranty or failed to conform to other
   express factual representations upon which the claimant relied).
14 However, the products liability allegations go on to touch solely
   upon failure to warn and design defect claims.  Because the
15 complaint lacks any factual basis for support of a breach of
   express warranty claim against Bill's Dollar Store, the court
16 also finds this bare allegation insufficient to support remand.

17
   [7]Accord Louis, slip op. at 3-4 & n.3 ("[K]nowledge, or a
18 reason to know, is also a necessary requisite for any claim of
   failure to warn or negligence that a plaintiff might undertake to
19 assert extraneous to a claim under the Products Liability Act
   itself (assuming solely for the sake of argument that such a
20 claim could exist)."); Cadillac Corp. v. Moore, 320 So.2d 361,
   365 (Miss. 1975) (discussing negligence in "vendor/purchaser"
21 context and stating that "fault on the part of a defendant so as
   to render him liable is to be found in action or nonaction,
22 accompanied by knowledge, actual or implied, of the probable
   result of his conduct.") Cf. Moore v. Memorial Hosp. of
23 Gulfport, 825 So.2d 658, 664-66 (Miss. 2002) (extending "learned
   intermediary" doctrine to pharmacists in case involving
24 prescription drug, and holding no actionable negligence claim
   could exist against a pharmacy unless a plaintiff indisputably
25 informed the pharmacy of health problems which contraindicated
   the use of the drug in question, or the pharmacist filled
26

ORDER
Page - 8 -

1  a plaintiff to show:

2      (1) a representation; (2) its falsity; (3) its materi-
   ality; (4) the speaker's knowledge of its falsity or
3  ignorance of its truth; (5) the speaker's intent that
   the representation should be acted upon by the hearer
4  and in the manner reasonably contemplated; (6) the
   hearer's ignorance of its falsity; (7) the hearer's
5  reliance on its truth; (8) the hearer's right to rely
   thereon; and (9) the hearer's consequent and proximate
6  injury.

7  Johnson v. Parke-Davis, 114 F. Supp. 2d 522, 525 (S.D. Miss.

8  2000) (citing Allen v. Mac Tools, Inc., 671 So.2d 636, 642 (Miss.

9  1996)).

10      Again, the court finds that the general and contradictory

11  allegations in the complaint do not support the existence of any

12  knowledge or reason to know on the part of Bill's Dollar Store to

13  support a negligence cause of action.  The court finds the

14  complaint similarly bereft of any factual support for the idea

15  that Bill's Dollar Store made any misrepresentations whatsoever

16  to plaintiffs regarding the PPA-containing products.  See, e.g.,

17  Johnson, 114 F. Supp. 2d at 525 ("Suffice it to say that Plain-

18  tiffs have no proof . . . that any of the named [Mississippi]

19  representatives made any representations directly to any of the

20  Plaintiffs.  Thus, none of the Plaintiffs was the 'hearer' of any

21  of the sales representatives' alleged misrepresentations.";

22  finding plaintiffs had no cause of action for misrepresentation).

23  Instead, as discussed above, the complaint attributes this

24

25  _____

26  prescriptions in quantities inconsistent with the recommended
   dosage guidelines).

ORDER
Page - 9 -

1　behavior to the manufacturing defendants alone.　As such, the

2　court also finds that plaintiffs fail to state negligence and

3　misrepresentation causes of action against Bill's Dollar Store.

4　C.　　Implied Warranty

5　　　　The complaint also alleges that Bill's Dollar Store breached

6　implied warranties of merchantability and fitness for particular

7　purpose.　See Miss. Code Ann. §§ 75-2-314, 315.　The complaint

8　accuses "defendants" of breaching the implied warranty of mer-

9　chantability in failing to adequately label containers and

10　packages containing PPA, and because the products sold failed to

11　conform to promises or affirmations of facts made on the contain-

12　ers or labels.　See Miss. Code Ann. § 75-2-314 (2)(e)-(f).　The

13　complaint accuses both manufacturers and sellers of breaching the

14　implied warranty of fitness for particular purpose where they had

15　reason to know of the particular use of the products, and the

16　purchasers relied on the sellers' skill or judgment in selecting

17　and furnishing suitable and safe products.　See Miss. Code Ann. §

18　75-2-315.

19　　　　In order to recover for breach of implied warranty, a buyer

20　"must within a reasonable time after he discovers or should have

21　discovered any breach notify the seller of breach or be barred

22　from any remedy."　Miss. Code Ann. § 75-2-607 (3)(a); accord C.R.

23　Daniels, Inc. v. Yazoo Mfg. Co., 641 F. Supp. 205, 210-11 (S.D.

24　Miss. 1986); Gast v. Rogers-Dingus Chevrolet, 585 So. 2d 725,

25　730-31 (Miss. 1991).　Here, the complaint contains no indication

26　that plaintiffs provided Bill's Dollar Store with any notice as

ORDER
Page - 10 -

1  to an alleged breach of warranty prior to the institution of this

2  lawsuit.

3      Additionally, with respect to the merchantability claim, the

4  complaint contains no factual support for a conclusion that

5  Bill's Dollar Store was in any way involved with the labeling

6  and/or packaging of the products at issue.  Instead, the com-

7  plaint alleges that the manufacturer defendants concealed mate-

8  rial facts regarding PPA through product packaging and labeling.

9      The court likewise finds plaintiffs' fitness for particular

10  purpose allegation insufficient.  "Mississippi does not recognize

11  an implied warranty of fitness for a particular purpose when the

12  good is purchased for the ordinary purpose of a good of that

13  kind."  Farris v. Coleman Co., 121 F. Supp. 2d 1014, 1018 (N.D.

14  Miss. 2000) (fitness for particular purpose claim failed where

15  plaintiff purchased cooler to keep food and beverages cold - the

16  ordinary purpose for which a cooler is used).  Here, plaintiffs

17  attested that they purchased PPA-containing products to remedy

18  their "cold, flu, sinus and/or allergy symptoms" - the ordinary

19  purpose of these medications.

20      Therefore, for the reasons stated above, the court finds

21  that plaintiffs fail to state implied warranty causes of action

22  against Bill's Dollar Store.

23  D.   Bankruptcy

24      Bill's Dollar Store filed a bankruptcy petition in February

25  2001, several months prior to the filing of plaintiffs' com-

26  plaint.  The filing of the bankruptcy petition operates as a stay

ORDER
Page - 11 -

1  on judicial or other proceedings brought against Bill's Dollar

2  store that were or could have commenced prior to the commencement

3  of the bankruptcy proceeding.  See 11 U.S.C. § 362(a); In re

4  Cajun Elec. Power Co-Op, Inc., 185 F.3d 446, 457 (5th Cir. 1999).

5       Plaintiffs argue that the automatic stay poses no barrier to

6  relief given that they were unaware of the bankruptcy petition at

7  the time they filed their complaint, and because they anticipate

8  that the Bankruptcy Court will agree to their pending request to

9  lift the stay.  However, whether or not plaintiffs knew of the

10 petition and whether or not the stay may later be lifted, the

11 fact remains that, at the time plaintiffs filed their complaint,

12 the stay operated to prohibit their lawsuit.  As noted above, the

13 court determines jurisdiction based on the claims as stated at

14 the time of removal.  As such, the court finds the existence of

15 the stay at the time of filing serves as an additional reason to

16 deny remand of this matter to state court.  Cf. Ritchey, 139 F.3d

17 at 1319-20 (denying remand where the statute of limitations had

18 expired at the time plaintiff filed the complaint).[8]

19                   III.  CONCLUSION

20      The court concludes that plaintiffs fail to state a cause of

21 action against the only non-diverse defendant, and that the

22 ────────────────────────────

23      [8]Unlike in a number of other cases transferred to this MDL,
   the defendants here did not supply the court with any summary
24 judgment-type evidence to establish the retailer defendant's
   fraudulent joinder.  However, the court nonetheless finds that a
25 plain reading of the complaint does not allow a conclusion that
   plaintiffs state a cause of action against Bill's Dollar Store.

26

ORDER
Page - 12 -

1  failure is obvious according to the settled rules of Mississippi.

2  As such, the court finds Bill's Dollar Store fraudulently joined

3  and DENIES plaintiff's motion to remand the case to the state

4  courts of Mississippi.

5      DATED at Seattle, Washington this 26th day of November,

6  2002.

7

8  BARBARA JACOBS ROTHSTEIN
   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 13 -

**EXHIBIT D**

1    Sonja S. Weissman (SBN 154320)
2    Dana A. Blanton (SBN 232373)
     REED SMITH LLP
3    1999 Harrison St., Suite 2400
     Oakland, CA 94612
     Telephone:   510.763.2000
4    Facsimile:   510.273.8832
     Email:  sweissman@reedsmith.com;
5    dblanton@reedsmith.com

6    Michael K. Brown (SBN 104252)
     Ginger Heyman Pigott (SBN 162908)
7    REED SMITH LLP
     355 South Grand Avenue, Suite 2900
8    Los Angeles, CA 90071
     Telephone:   213.457.8000
9    Facsimile:   213.457.8080
     Email:  mkbrown@reedsmith.com;
10   gheyman@reedsmith.com

11   Attorneys for Defendant
     Medtronic, Inc

12

13

14                    UNITED STATES DISTRICT COURT

15                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

16

17   ROSEANN MITCHELL, URIELA            No.
     MITCHELL, THOMAS MITCHELL and
     PATRICIA HINES,                     **AFFIDAVIT OF David Henry Roberts**
18
                 Plaintiffs,
19
            vs.
20
     MEDTRONIC, INC., McKESSON
21   CORPORATION and Does 1 to 50,
     Inclusive,
22
                 Defendants.
23

24

25

26

27

28

                              Affidavit of

1    I, **David Henry Roberts**, having been duly sworn on oath, hereby depose and state as follows:

2

3         1.      I am a **Vice President** for Medtronic, Inc., one of the two named Defendants in the

4    above-captioned action.   The other named Defendant in the above-captioned action is McKesson

5    Corporation ("McKesson").

6

7         2.      Defendant McKesson is not now, and has never been, a seller or distributor of

8    Sprint Fidelis Leads in the State of California or anywhere else in the United States and as such,

9    McKesson did not distribute or sell the Sprint Fidelis lead at issue in this action.

10

11        3.      Defendant McKesson has never been authorized by Medtronic to market, distribute,

12    promote, advertise, or sell Medtronic Sprint Fidelis Leads in the State of California or anywhere

13    else in the United States.

14

15    FURTHER AFFIANT SAYETH NOT.

16

17

18

19                                                                David Henry Roberts

20    Subscribed to and sworn
21    Before me this 14ᵗʰ th day of
      November 2007
      December

22

23    Tammy Kaye Waterman
      Notary Public

24

25

26    DOCSOAK-9691285.1

27

28

TAMMY KAYE WATERMAN
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010

-1-

Affidvit Of

REED SMITH LLP
A LIMITED LIABILITY PARTNERSHIP FORMED IN THE STATE OF DELAWARE